Henry L. Nagle, Respondent, *v.* Robert McFeeters et al., Appellants.

Where a principal consigns goods to an agent to sell, under an agreement that the latter will accept bills drawn upon him by the former to the

amount of goods so consigned on hand, it is a necessary inference that the drafts are to be drawn on the credit of the goods; and to the amount of acceptances outstanding, the agent has a lien on the goods in his hands, as security, and is entitled to retain the same until the acceptances are paid.

*It seems* that where, by the agreement, the agent is to apply the proceeds of sales to the payment of drafts so drawn, as they mature, he may not hold goods as security against drafts which he can pay with funds of his principal in his hands applicable to that purpose, and the principal, after paying all drafts outstanding, save an amount no greater than the proceeds of sales in the agent's hands, may claim and take possession of the goods.

(Argued October 17, 1884; decided October 31, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made October 28, 1882, which affirmed a judgment in favor of plaintiff, entered upon a verdict.

The nature of the action and the material facts are stated in the opinion.

*Samuel Hand* for appellants. It was error to refuse to allow the defendants to give evidence of their counter-claim for the plaintiff's breach of the contract. (Code, § 501; *Brown* v. *Buckingham,* 11 Abb. Pr. 387 ; *Currie* v. *Cowles,* 6 Bosw. 452.)

*C. E. Tracy* for respondent. The defendants' alleged counter-claim was properly disallowed. The cause of action was for the wrongful detention of property, not its conversion. (*Gottler* v. *Babcock,* 7 Abb. 392 ; *DeLeyer* v. *Michaels,* 5 id. 203; *Coddington* v. *Dunham,* 3 J. & S. 412; *Atkins* v. *Hearns,* 3 Abb. 187.)

EARL, J.  On the 1st day of March, 1876, the plaintiff was engaged in business in Philadelphia, under the firm-name of Nagle & Co., as a blank book manufacturer, and the defendants, under the firm-name of McFeeters & Co., were engaged in business in the city of New York as blank book jobbers. On that

day the parties entered into a written contract whereby it was, among other things, agreed that the defendants were to act as agents of the plaintiff in the city of New York, to sell for him blank books for the period of three years from that date, for a stipulated salary to be paid to them by him; that he was to consign blank books to them, to the amount in value of $6,000, and was to replenish the stock from time to time as the necessities of the business required; that the goods shipped to them, or consigned under the terms of the agreement, were to be and remain his sole property until actually sold and delivered by them; and that they were to render monthly accounts of all sales, and pay over all sums of money, notes. and securities for goods sold at the time of rendering such statements. The parties acted under that contract until the 1st day of March, 1877, when they mutually agreed to modify it, so that the defendants should thereafter receive no salary, but in lieu thereof should receive a part of the profits of the sales of the books, namely, all that they should realize over and above certain specified prices at which the books were to be billed to them by the plaintiff. The parties acted under the contract as thus modified until January, 1878, when a dispute having arisen between them, the plaintiff demanded from the defendants the blank books which they then had in their possession, and also the proceeds of such as had been sold; and upon their refusal to deliver such books, he, in the month of February thereafter, commenced this action to recover the possession thereof. The defendants defended the action, and in their answer, among other things, set up that they had a lien on the books for their protection against certain outstanding drafts drawn on them by the plaintiff, and accepted by them, for his accommodation.

Upon the trial the defendants gave evidence tending to show that subsequently to the 1st day of March, 1876, the plaintiff requested permission to draw drafts on them which they were to accept for his accommodation, under an agreement that he was to keep in their possession blank books in value to the amount of the drafts, and that they should hold the books as their indemnity against liability on the drafts. It was undis-

puted on the part of the plaintiff that an arrangement was made between him and the defendants that he should draw drafts on them which they were to accept for his accommodation, and that he was to keep goods in their hands to about the amount of the drafts ; but he denied that there was any agreement that they were to have a lien upon the goods. The main question litigated upon the trial was whether, by the arrangement between the parties, the defendants were to have any lien on the goods as their security against the drafts, and that question was submitted to the jury. The counsel for the defendants, however, claimed upon the trial, that they were entitled to the lien, upon undisputed evidence, and on that ground he moved for a nonsuit which was denied ; and the only question which I deem it important now to consider is, whether, upon the evidence given by the plaintiff, the defendants had the lien which they claimed, and whether they were entitled to hold the goods until the outstanding drafts were paid or surrendered to them.

It appeared that, at the time of the commencement of this action, the defendants had in their possession goods of the plaintiff worth about $2,600, and proceeds of goods sold, including accounts uncollected, amounting to about $3,000, and that, at the same time, there were drafts outstanding which they had accepted for the accommodation of the plaintiff, and which were past due and under protest, about $6,300.

If it was true that the arrangement was, as claimed by the defendants, that they were at all times to hold the goods in their possession as a protection against their acceptances for the accommodation of the plaintiff, then while the drafts were outstanding, the plaintiff had no right to take the goods out of their possession. He could pay and take up the drafts, and then demand the goods, but so long as the drafts were outstanding and unpaid, and the defendants were liable as acceptors thereof, they had the right to retain the goods as their security.

We think the contention of the defendants is well founded, that upon the evidence as given on the part of the plaintiff, without reference to that given on the part of the defendants,

which is more favorable to them, their right to hold the goods was clearly established.

John R. Nagle, who was the plaintiff's agent, acting under a power of attorney, and who transacted nearly all the business on the part of the plaintiff under his agreement with the defendants, testified that the agreement under which the drafts were drawn, and acceptances given by the defendants, was verbal, and that some letters passed on the subject; and he gave evidence as follows: " We agreed that Messrs. McFeeters & Co. should give us acceptances to the amount of goods which they had of Mr. Henry L. Nagle in their possession." " Messrs. McFeeters & Co. did agree to give us their acceptances to the amount of the goods, and the moneys they had in their hands belonging to Henry L. Nagle." " They agreed to give accommodation paper to the amount of the goods and value they held." On the 16th of January, 1877, the plaintiff wrote to the defendants stating, among other things, that he had of their acceptances certain drafts, describing them, amounting in all to $4,000, and saying further: " You have of ours, in accounts and stock, about $7,000 ; you agreed with us last fall to give us acceptances to cover the amount of goods you held belonging to us, and it is very hard in these times for us to carry them unless we can have your paper to cover the full amount subject to the usual terms, *i. e.,* we are to pay them if you cannot from your receipts. We could use $2,000 of your paper at once, and we are in immediate want of it ; you would very much oblige us by accepting and returning the inclosed drafts." On the 16th of February, 1877, the plaintiff again wrote to the defendants a letter, in which, among other things, he stated as follows : " We find you have about $6,200 of stock, and about $2,500 of accounts unpaid, or a total of $8,700. We have of your paper about $5,000, which leaves a balance of $3,700 ; we inclose you drafts for that amount for acceptance as we can use some of these acceptances at once. We would be obliged to you if you would return them to us at once." In pursuance of that request

acceptances were sent.    There was nothing in the evidence anywhere to destroy the legal effect of the facts thus proved.

The trial judge in his charge to the jury stated the claims of the respective parties as follows : " The defendants claim that the understanding was that they were to have a lien upon the goods, and their proceeds, to secure the payment of the accommodation acceptances ; that they were to have the right to hold enough of the merchandise on hand, and enough of the proceeds of that which had been sold, to cover at all times any and all outstanding acceptances.    The plaintiff's claim is that there was no such understanding ; that the real understanding was that the defendants were to pay the acceptances out of the proceeds, and were thereupon to be credited with the amount so paid.    If the proceeds on hand when an acceptance matured were insufficient to pay the acceptance, then the plaintiff would furnish sufficient funds to make up the difference."    And he further charged that " the plaintiff had a legal right to demand his goods, and the defendants were bound to give them up, unless they have shown to your satisfaction that there was an understanding by which they had a right to hold them as their security and protection against the outstanding acceptances."

We think the evidence given on the part of the plaintiff, to which we have called attention, giving it a construction most favorable to him, and construing it with reference to the relations of the parties, showed clearly an agreement that the defendants were to have a lien on the goods in their hands to protect them against the acceptances.    These parties lived in different cities.    The plaintiff, as may be inferred, was not a man of much financial means, or of much pecuniary credit.    If the defendants were to have no lien on the goods, then there could be outstanding acceptances to a large amount, and according to the contention of the plaintiff, he could take all the goods out of their possession, leaving them without any security whatever for their protection.    Such a condition of things could not have been intended by the parties.    When it was arranged that the defendants should accept to the amount of goods in their hands, it was necessarily implied that the acceptances should be upon the credit and security of

the goods in their hands; otherwise, any reference to the goods was wholly idle and unnecessary. Here was the principal consigning goods to his agents to sell, under an agreement that he should be permitted to draw upon them drafts which they were to accept for his accommodation, to the amount of the goods thus consigned. What is the legal inference from such a state of facts? What other inference can there be, except that the drafts were drawn on the credit of the goods, and the goods were to be held as an indemnity against the drafts? There could have been no other understanding, and no other legal effect can be given to the arrangement. If such was not the arrangement, why did the plaintiff, in the letters he wrote, refer to the amount of goods, showing that the defendants had goods in excess of the amount of drafts accepted, and requesting acceptances for the balance? Why was such a particular reference to the amount of goods on hand, unless it was understood that they held the goods as security? If the defendants had, upon the request of the plaintiff, advanced to him money for his accommodation, in advance of the sale of the goods, he would clearly have had a lien upon the goods, to secure such advances; and their acceptances for plaintiff's accommodation stood upon the same footing. Such is the general common-law rule between principal and factor, and consignor and consignee. A factor has, in the absence of any express agreement, a lien upon the goods in his hands as his security for all advances made, or acceptances given to his principal in the business of his agency, or connected with the goods consigned to him. The law implies or infers the lien from the relation between the parties. (1 Pars. on Cont. [5th ed.] 98; 3 id. 259; *Holbrook* v. *Wight*, 24 Wend. 169; *Bank* v. *Jones*, 4 N. Y. 497.) The same rule is applicable to this case.

Therefore, taking into consideration the relation between these parties, and what was said and done, we think, that upon the plaintiff's evidence, construed most favorably to him, the inference is necessarily drawn that the goods were to remain in the hands of the defendants, as ~ir security against the

drafts.    As drafts were outstanding to at least the amount of all the goods and proceeds in the hands of the defendants, the plaintiff was not in a position to maintain this action, and he should have been nonsuited.

That there may be no misapprehension, it may be added that if there was an agreement that the defendants should apply the proceeds of goods sold to the payment of drafts as they matured, then so far as they had such proceeds in their hands applicable to that purpose, they were bound to apply them to that purpose; and they could not hold the goods as security against drafts which they could thus pay, and were bound to pay; and in such case the plaintiff, after paying the drafts, so as to leave outstanding an amount no greater than such proceeds, could claim and take the goods from the possession of the defendants.

The judgment should, therefore, be reversed, and a new trial granted, costs to abide event.

All concur.

Judgment reversed.