No. 8203.

SHAW, ADM'R, *v.* FERGUSON ET AL.

LIEN.—*Factor.*—One who carries on the business of slaughtering hogs, and curing, storing and selling the product, as well for himself as for others, and makes advances to such customers, continuously holding possession of their product until he sells it, is a factor, and has a lien on the product of the customer, for services and advances.

SAME.—*Measure of Damages.*—Where a factor sells the property of his principal on which he has a lien for services and advances, he may retain the amount of his lien, out of the proceeds, whether the sale be authorized or tortious, and he is liable (no question being made about the price obtained) only for the balance.

PRACTICE.—*Evidence.*—*Harmless Error.*—The erroneous admission of evidence, and allowing an incompetent witness to testify, are not available error, if it appear affirmatively by the special findings of the court that the evidence thus improperly admitted had no effect whatever upon the result of the trial.

From the Marion Superior Court.

*D. V. Burns* and *H. Burns,* for appellant.

*B. Harrison, C. C. Hines, W. H. H. Miller, T. A. Hendricks, C. Baker, O. B. Hord* and *A. W. Hendricks,* for appellees.

WORDEN, J.—Action by the appellant against the appellees to recover the value or proceeds of certain hog products sold by the ' defendants. The pleadings need not be stated, as no question arises upon them. Trial by the court and special finding of the facts and statement of conclusions of law, as follows:

" *First.* In the year 1871 the defendants were partners and the owners of a slaughtering and pork-packing establishment in the city of Indianapolis, and had for many years prior to that time been engaged in that business in that city. That said business embraced the slaughtering and dressing of hogs, and the curing, packing and selling of the products of hogs slaughtered. That said defendants slaughtered and packed hogs on their own account, and also for and on account of others, and had long established the custom and usage of advancing money to persons for whom they slaughtered and packed hogs, and of receiving from such persons compensation for slaughtering, packing and selling, and also interest on money advanced to persons for whom they, the defendants, slaughtered and packed hogs.

" *Second.* That the usage and custom which prevailed at the defendants' establishment was, to take the promissory notes of persons for whom they agreed to slaughter and pack hogs, for advances made on hogs to be furnished by such persons for the said defendants to slaughter and pack. That such notes as were taken by the defendants were made payable in bank. That the usage and custom of the defendants was to deduct the compensation for slaughtering, packing and selling from the proceeds realized from the sale of the products of the hogs slaughtered, and to apply the same to the payment of such notes or to pay the same to the person for whom the hogs were so slaughtered and packed.

" *Third*. That on the 10th day of October, 1871, the following contract was entered into between the parties: ' I have this day agreed to pack 500 hogs with J. C. Ferguson & Co., at their pork house at Indianapolis, Indiana; J. C. Ferguson & Co. to charge the regular charges for packing; T. P. East to pay ten per cent. for all moneys so advanced on the hogs packed. (Signed)     T. P. EAST.'

" *Fourth*. That the aforesaid contract was the only express contract entered into between the said decedent and defendants, and that the aforesaid contract was subsequently modified by agreement of the contracting parties as to the number of hogs to be furnished by East for slaughtering and packing, and as to the amount of advances to be made by Ferguson & Co.

" *Fifth*. That at said time there were various other establishments at Indianapolis and in other parts of the State of Indiana, carrying on the same business and at which the custom and business prevailed and was carried on of slaughtering hogs, curing and packing the products for the owners, and advancing money to aid in purchasing, feeding and shipping such hogs. That the usage and custom of these establishments throughout the State of Indiana was to make sales in their own names, account for the proceeds and deduct from the moneys received at such sales the charges for slaughtering the said hogs, curing and packing the products thereof, the commission for selling said products, and the moneys advanced to the owners, and paying over the balance of the moneys so received to the owners.

" *Sixth*. That at the time of executing the aforesaid contract, and for many years prior thereto, there existed at the city of Indianapolis, and generally throughout the State of Indiana, in the business in which the defendants were engaged and among those engaged in the same line of business, the custom entitling the persons slaughtering and packing hogs to a lien on the products of hogs slaughtered for the charges of slaughtering, curing, packing and selling; and also to a lien for the sums

of money advanced by the persons engaged in the business of slaughtering and packing hogs. That such custom entitled the persons advancing the money to a lien on the products of the hogs slaughtered; but there is no evidence of any custom affecting the money advanced in cases where the person furnishing hogs has died after advances made and before the sale of the property.

"*Seventh.* That large sums of money were, by the defendants, advanced to the said decedent, T. P. East, and that the defendants required said East at one time to execute a note, payable at a future day at 'The Indiana National Bank,' in Indianapolis, for four thousand dollars ($4,000), with Hughes East and one Lyons as sureties on said note, and that said East and Lyons were accommodation parties on said note, and were believed to be and were responsible parties pecuniarily at the time of executing the said note, and that said note was discounted in bank, the defendants endorsing the same, and the proceeds were paid to said Thomas P. East.

"*Eighth.* That, on the 14th day of May, 1872, said Thomas P. East departed this life intestate, at his residence in the county of Greene and State of Indiana; that all of said hogs were slaughtered for and said money advanced to said Thomas P. East in his lifetime.

"*Ninth.* That, at the time of the death of said Thomas P. East, his estate was insolvent, and, on the — day of ———, 1872, Hughes East was duly appointed administrator of said Thomas P. East's estate by the proper court of said county of Greene and qualified as such, and entered upon the duties of his said trust on the — day of ———, 1872, and before the commencement of this action.

"*Tenth.* That on the — day of ———, and before the commencement of this action, said estate of Thomas P. East, on proper petition to said court of Greene county, Indiana, was adjudged and declared to be insolvent.

"*Eleventh.* That, at the time of the death of said Thomas P. East, the said defendants had in their possession the products

of said hogs, so delivered, of the value of nine thousand two hundred and seventy-three dollars and sixty-six cents ($9,-273.66), and that after his death they sold said products at private sale in the market for the said sum, and received said value in cash and in the usual course of business.

"*Twelfth.* That said property was never reported to the Probate Court of Greene county, Indiana, nor inventoried as a part of the estate of said Thomas P. East, nor was it sold by order of the said court, and that the same was never appraised; that the said sale was made by the said defendants with the knowledge and consent and direction of said Hughes East, the administrator of said estate, without any direction or approval of said probate court, and said sale was never reported to said court.

"*Thirteenth.* That all of the products of the hogs slaughtered for the said Thomas P. East were sold in the regular and usual course of business by said Ferguson & Co., as well those sold before as those sold after the death of said Thomas P. East.

"*Fourteenth.* That after the appointment of said Hughes East, as administrator, he resigned said trust, and the said plaintiff was duly appointed as the administrator *de bonis non* of said decedent's estate.

"*Fifteenth.* That neither the said Thomas P. East, in his lifetime, nor Hughes East, nor the plaintiff, ever made any objection to the defendants' claim of lien, or of their right to sell the products of the hogs slaughtered on account of said Thomas P. East, but said Hughes East, administrator as aforesaid, did consent thereto.

"*Sixteenth.* That, up to the date of the death of said Thomas P. East, the said defendants had sold of the products of the hogs slaughtered on his account, seven thousand one hundred and forty-four dollars and fifty cents ($7,144.50) in value; that since the death of said Thomas P. East, they have sold products to the value of nine thousand two hundred and seventy-three dollars and sixty-six cents ($9,273.66).

"*Seventeenth.* That the total value of the products which

came into the hands of said defendants was the sum of sixteen thousand four hundred and eighteen dollars and sixteen cents ($16,418.16).

"*Eighteenth.* That the total of all the charges and expenses due to the said defendants is two thousand seven hundred and one dollars ($2,701), that being the total costs and expenses of slaughtering, curing, packing and selling.

"*Nineteenth.* That the total amount of principal and interest of advances made to Thomas P. East, by the said defendants, was thirteen thousand six hundred and ninety-two dollars and fifty cents ($13,692.50); that the defendants allowed to the plaintiff, as interest on the money received by them on sales made, the sum of two hundred and sixty dollars and ninety-six cents ($260.96), leaving due for advances and interest, the sum of thirteen thousand four hundred and thirty-one dollars and fifty-four cents ($13,431.54).

"*Twentieth.* That the amount realized from the sales exceeded the costs and charges, money advanced and interest thereon, in the sum of two hundred and sixty-five dollars and sixty-two cents ($265.62); that the interest thereon until the 25th day of February, 1879, amounts to the sum of one hundred and four dollars and sixty-nine cents ($104.69).

"*Twenty-first.* That the aforesaid property remained continuously in the possession of the defendants from the time they received it until the sales were made, and that during all this time it was stored and cared for by them.

"*Twenty-second.* That while Hughes East was acting as the administrator of Thomas P. East's estate, and before his resignation of said trust, he did receive from the said defendants, a statement as to the condition of the accounts between his intestate and the defendants, from which it appeared that there was then due and owing from the defendants to Thomas P. East's estate the sum of two hundred and eighty-five dollars and sixty-two cents ($285.62); that the said Hughes East, as administrator as aforesaid, did then and there direct that the said defendants should place said last mentioned sum to the

credit of him, the said Hughes East, on his own individual account, and that the said defendants did give him credit therefor, on his individual account.

" *Twenty-third.* That the balance shown as aforesaid to be in favor of said Thomas P. East's estate has never been paid, except as above shown, by entering it to the credit of said Hughes East.

" *Twenty-fourth.* That at the time of said settlement and accounting with said Hughes East, administrator as aforesaid,. the said estate of said Thomas P. East was understood and: believed to be solvent; that it was subsequently ascertained: that the said estate was insolvent.

## "CONCLUSIONS OF LAW.

" Upon the foregoing facts, I state the conclusions of law as follows:

" *First.* That by the custom and usage prevailing at the defendants' establishment, and which had for many years prevailed throughout the State of Indiana, the defendants were entitled to hold a lien upon the products of the hogs by them slaughtered for the plaintiff's intestate, for all charges of slaughtering, curing, packing, storing, and for all advances of money made, together with interest thereon, and that this lien continued after, and was not affected by, the death of the said Thomas P. East.

" *Second.* That the plaintiff herein is not entitled to recover,. except as to the sum of two hundred and sixty-five dollars and sixty-two cents ($265.62) and interest, because the defendants had a right to hold said property as security for their charges and advances, and had the further right to maintain possession thereof and sell it, as they did, in the usual and regular course of business.

" *Third.* That the credit of the balance found due from the defendants to the plaintiff's intestate, on the individual account of said Hughes East, was not a payment of said balance; that the plaintiff is entitled to recover the said balance,.

principal and interest, amounting to the sum of three hundred and seventy dollars and thirty-one cents ($370.31).

"BYRON K. ELLIOTT, Judge."

The plaintiff excepted to the conclusions of law, and also moved for a new trial, but his motion was overruled. Judgment accordingly for the plaintiff for the sum of $370.31. Judgment affirmed on appeal to general term. The plaintiff, claiming to be entitled to a larger amount, appeals to this court.

We are of opinion that the conclusion stated by the court, that the plaintiff was entitled to recover only the amount mentioned, was correct. This is the vital point in the conclusion.

In reference to the conclusion, as to the effect of the custom found, we express no opinion, inasmuch as, from the views we take of the case, the custom was unnecessary to the conclusion as to the amount which the plaintiff was entitled to recover.

The special findings show that the relation of principal and factor existed between the defendants and Thomas P. East, in his lifetime, in reference to the sale of the hog products.

The business of the defendants was the slaughtering, dressing, etc., of hogs, and the sale of the products, not alone on their own account, but also on account of others. See Wharton on Agency, section 735. The defendants made to East advances on the hogs which were by the latter delivered to them to be slaughtered and sold, and the defendants had continuous possession of the property, stored and cared for it, until they finally sold it in the usual course of business. Taking the findings altogether, we are satisfied that the defendants were the factors of the deceased for the sale of the products of the hogs. This is not stated in terms in the findings, but it is the legal effect of them.

The law gave the defendants, as slaughterers, packers, etc., a lien on the products for their reasonable charges for slaughtering, packing, etc. *Hanna* v. *Phelps*, 7 Ind. 21.

The law also gave the defendants, as the factors of the deceased, a lien on the property for advances thereon, expenses and commissions. Wharton on Agency, section 767.

This lien was not divested by the death of Thomas P. East.

It is said that where goods are merely in transit to the factor at the time of the death of his principal, the death of the latter does not prevent the lien of the factor from attaching, if he has made advances or incurred expenses on the faith of the consignment. Wharton on Agency, section 773.

It appears from the finding, that the value of the hog product that came into the hands of the defendants, and which was sold by the defendants, some before and some after the death of the deceased, amounted, after adjusting the interest, to $260.96 more than the amount of their costs and expenses for slaughtering, etc., and their advances to the deceased; and this sum, with interest thereon, was the amount recovered.

This sum was all the plaintiff was entitled to, unless he was entitled to recover the full value of the property sold after the death of the deceased, thus depriving the defendants of all benefit of their lien on the property. It seems to us to be clear in principle as well as by authority, that the plaintiff was not entitled to the full value of the property sold by the defendants after the death of the deceased.

It would seem that if the administrator of the deceased had sold the property for its full value, and not subject to the lien of the defendants, he could have been required to pay, out of the proceeds, the amount of the defendants' lien, instead of making the whole fund arising from the sale general assets.

It is certain, at least, that the administrator could not, without the consent of the defendants, have sold the property otherwise than as subject to the lien of the latter. Whitaker's Law of Lien, 75; *Godin* v. *London Assurance Co.*, 1 Burr. 489.

We do not decide whether the defendants had the legal right to make the sale after the death of the deceased, in order to reimburse themselves for their advances, etc.; but assuming that they had not, and that the sale thus made was tortious, still the measure of the plaintiffs' damages, in an action for the tort, was the value of the property less the amount of the

lien which the defendants had upon it. This, as has been seen, was the amount which the plaintiff recovered.

This rule as to the measure of damages furnished the plaintiff a full indemnity for all the loss sustained in consequence of the sale of the property by the defendants after the death of the intestate, and is abundantly sustained by the following, among other authorities: *Fowler* v. *Gilman,* 13 Met. 267; *Briggs* v. *Boston, etc., R. R. Co.,* 6 Allen, 246; *Work* v. *Bennett,* 70 Pa. St. 484; *Baltimore Marine Ins. Co.* v. *Dalrymple,* 25 Md. 269, 307; *Belden* v. *Perkins,* 78 Ill. 449; *Chinery* v. *Viall,* 5 H. & N. 287; *Brierly* v. *Kendall,* 17 Q. B. 937; *Johnson* v. *Stear,* 15 C. B. (N. S.) 330, and note; *First Nat. Bank of Louisville* v. *Boyce,* 78 Ky. 42; *Stearns* v. *Marsh,* 4 Denio, 227; *Baker* v. *Drake,* 53 N. Y. 211. In the case last above cited, the court said that "the rule of damages should not depend upon the form of the action. In civil actions the law awards to the party injured a just indemnity for the wrong which has been done him, and no more, whether the action be in contract or tort; except in those special cases where punitory damages are allowed, the inquiry must always be, what is an adequate indemnity to the party injured, and the answer to that inquiry can not be affected by the form of the action in which he seeks his remedy."

What we have said disposes of the questions arising on the special finding of facts, and the conclusions of law thereon.

We proceed to the motion for a new trial.

It is urged that the finding is not sustained by the evidence, in this, that the amount found due the plaintiff was too small. We are of opinion, however, that the evidence justified the finding.

It is also urged that the court erred in admitting certain testimony in relation to the custom mentioned in the finding. Without stopping to inquire whether there was any well founded objection to the testimony, we think it clear that its introduction did the plaintiff no possible harm, inasmuch as, in the view we take of the case, the custom is an entirely un-

essential and unimportant element in the case. The conclusion reached by us would have been the same had the custom not been found.

It is objected that Hughes East, the former administrator, was permitted to answer the following question : " After you were appointed you ratified what was done ? Did you not, after you were appointed, have an accounting with them (the defendants) and receive from them the proceeds and the balance of the proceeds, taking into account all the sales they had made up to the 25th of July ? "

The objection urged to this question is, that " the administrator was the agent of the law, with limited authority. He could neither authorize an unlawful sale to be made, nor ratify one after it had been made. The appellees were bound to take notice of the law, and they can not justify their unlawful acts by proving that a person having no such power either authorized or ratified them." The objection thus made shows that the evidence was harmless as respects the ground pointed out, as we have considered the case on the assumption that the sale made after the death of the deceased was tortious and unlawful.

Among the reasons for a new trial are the following :

" The court erred in permitting J. C. Ferguson " (one of the defendants) " to testify that after the death of Thomas P. East he received directions from said Hughes East as to what should be done with the product of the hogs."

" The court also erred in permitting the said Ferguson defendant, to testify as to the declarations of Hughes East while he was administrator of Thomas P. East's estate, made to him.  *  *  *

"Also erred in permitting this question to be asked said Ferguson, and his answer over the plaintiff's objection, viz.: Were or were not all contracts for advancement of money in hogs, under such circumstances, made with reference to that custom ?

"Also erred in permitting said defendant Ferguson to testify that Hughes East notified him he was administrator of

the estate of the decedent, and stated to them to use their best judgment, and close the stuff out to the best advantage, and make all out of it they could."

It appears by a bill of exceptions, that objection was made on the trial that Ferguson, being a party, was incompetent to testify to the matters proposed to be proved by him, but the objection was overruled and exception taken. It is now objected here, that Ferguson was incompetent to testify in the cause at all. See act of March 11th, 1867, 2 R. S. 1876, p. 132, amended in 1879, Acts 1879, p. 245.

It is quite doubtful whether the above reasons for a new trial were sufficient to bring in review the question whether the witness was competent to testify in the cause. The reasons filed would seem to call attention to the character of the testimony rather than the competency of the witness to testify.

But, however this may be, conceding that the question is properly saved, the evidence mentioned in the above reasons for a new trial was entirely harmless and worked no injury whatever to the plaintiff, in view of the ground already indicated in this opinion, on which the case must be decided.

If the court erred in permitting the witness to testify to the matters thus mentioned, because of the incompetency of the witness or otherwise, the error was a harmless one. We find no available error in the record.

The judgment below is affirmed, with costs.

ELLIOTT, C. J., took no part in the decision of this case.

Petition for a rehearing overruled.