THE FIRST NATIONAL BANK OF ELGIN

*v.*

WILLIAM SCHWEEN, Exr. *et al.*

*Filed at Ottawa April 3, 1889.*

1. FACTOR—*what will constitute.* Where milk is furnished by parties to a manufacturer of butter and cheese, to be made into those commodities and sold by him on their account, he will be the factor of his patrons. The fact that he is to prepare the product for market, will not render him any the less a factor.

2. SAME—*factor may give guaranty as to results.* The principal may, by contract, require the agent or factor to guarantee the price of all goods sold, and the factor may guarantee that the property of his principal shall realize a certain sum, and secure this by deed of trust upon his land, or by personal security.

3. SAME—*factor giving his principal's property in pledge.* A factor can not pledge the goods of his principal for his own debt, and if he does so, no title will pass.

4. SALE—*not a mere bailment.* Where the identical thing delivered is to be restored, though in an altered form, the contract is one of bailment, and the title to the property is not changed; but when there is no obligation to restore the specific article, and the receiver is at liberty to return another thing of equal value, he becomes a debtor to make the return, and the title to the property is changed,—it is a sale.

5. CONFUSION OF GOODS—*burden of proof to identify property.* If a party unlawfully or fraudulently mixes and confuses his goods with those of another, held by him as an agent or factor, so that they can not be distinguished, the innocent party will be entitled to take the

whole. The burden is upon the party thus confusing his goods with those of another, to identify his own property.

6. DEED OF TRUST—*description of beneficiaries.* It is not essential to the validity of a deed of trust, that the beneficiaries shall appear therein by name. It will be sufficient if they are so described or designated that they may be ascertained and distinguished.

7. A deed of trust was given by a dairyman to a trustee, to secure all persons who might furnish milk to be made into butter and cheese, and sold by the maker on their account, but failed to state the names of the beneficiaries who were to be thereby secured: *Held,* that the beneficiaries were those who should thereafter furnish the factory with milk, to be made into butter and cheese under the grantor's verbal agreement. In such case, the trust deed is a continuing offer by the maker to all persons who might patronize him.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

Mr. JOHN WOODBRIDGE, for the appellant.

Messrs. SHERWOOD & JONES, for the appellees.

Per CURIAM: The first and principal question presented by this record is, whether Kilbourne was the owner of the butter and cheese which he delivered to Bosworth on the night of October 14, 1883, in part payment of his indebtedness to the bank. If he was, then the bank is entitled to have its proceeds applied upon the indebtedness of Kilbourne to the bank. It is contended by appellees, who were complainants in the original bill, that the butter and cheese belonged to them, and was in the hands of Kilbourne as their factor and agent, under an agreement to make and sell the same for their benefit and use. The solution of this question depends upon the contract of Kilbourne with the patrons of his factory, under which they furnished milk, the contention being, on the one side, that the milk was sold outright by complainants and others to Kilbourne, and on the other, that the milk was delivered to him to be manufactured and sold by him for and on account of the owners of the milk.

Prior to Kilbourne's purchase of the cheese factory at Barrington, in April, 1881, it had been operated by one McAdam, on what is known as the dividend plan, by which he received milk from the neighboring farmers and dairymen, and manufactured it into butter and cheese for them at a certain price per pound, sold the product, and after deducting his commission for making and selling, he divided the balance of the proceeds among the patrons, in proportion to the quantity of milk each had furnished. Soon after his purchase, Kilbourne had a conference with the farmers and dairymen, and agreed with them to take and manufacture into butter and cheese their product of milk, he to receive four cents a pound for the butter manufactured and two cents a pound for cheese made therefrom, he to sell the product and pay them the proceeds of the sale, less his compensation, in proportion to the amount of milk furnished by each, and gave personal security for the faithful performance of his agreement for one year. At the end of the first year, on April 4, 1882, Kilbourne, together with his wife, made their certain deed of trust to Alfred Bosworth, which deed contains the following recitals and provisions:

"Whereas, said Kilbourne, grantor, is engaged in a certain cheese factory, located on said premises, in the manufacture of cheese and butter from milk furnished by sundry persons or patrons, which said cheese and butter the said Kilbourne sells from time to time, paying said patrons the proceeds of such sales as dividends, or as indebtedness for milk delivered to him; and whereas, said Kilbourne will become indebted, from time to time, to said patrons for the milk so delivered or to be delivered, and the proceeds arising from the sale of the product thereof: Now, if default be made in the payment to the patrons by Kilbourne for the milk to be delivered to him, or the proceeds arising from the sale of the product thereof, as aforesaid, for the space of sixty days from the last day of any month in which such milk shall be delivered, payment for all milk delivered by said patrons to said Kilbourne up to the date

of such default shall become immediately due. * * * The dividends arising from the proceeds of the sales of the product of the milk, as aforesaid, shall be considered due and payable to the said patrons at the expiration of eighty days from the beginning of any month in which the said milk shall be so delivered."

The witnesses George W. and W. G. Waterman, Prouty, Kingsley and Clark, were present at Kilbourne's first meeting with the patrons of the factory, and testified, that he solicited the farmers to furnish milk to be made into butter and cheese on the dividend plan, and agreed with them to charge two cents per pound for making cheese and four cents per pound for making butter and selling the same, and that he would render honest dividends, which should be equal to, if not more than, the average dividends of surrounding factories. He refused to buy milk of a number of persons who testify, giving as a reason therefor, that if he bought of one he would have to buy of all. There is, in our opinion, no doubt, from the evidence, that Kilbourne promised his patrons that he would give them as good dividends, and that the same should average with those given by other factories. It is true, some of the witnesses, speaking of this, say that he agreed they should be paid for their milk as much as was paid by other factories. This, however, is not necessarily inconsistent with the idea of paying for the milk in dividends.

The allowance of two cents a pound for cheese and four cents for butter made, for the manufacture and sale by Kilbourne, is inconsistent with the idea of an absolute purchase of the milk by him. If he bought the milk, for cash in hand or on credit, the product was his own, and there could have been no good reason why the vendors of the milk should have allowed him a commission for making and selling the same. It is shown, in accordance with the theory that Kilbourne was the agent of the complainants to manufacture and sell butter

and cheese for them, that the patrons called him to an account for buttermilk he had sold, and forbid sales in the future.

If there was any doubt of the fact of the agency of said Kilbourne in the matter, the recitals in the deed of trust before mentioned ought to remove it,—that Kilbourne was "engaged in the manufacture of cheese and butter from milk furnished by sundry persons or patrons, which said cheese and butter he sells from time to time, paying said patrons the proceeds of such sale as dividends, or as indebtedness for milk delivered to him." And again: "The dividends arising from the proceeds of the sales of the products of the milk, as aforesaid, shall be considered due and payable," etc., would seem to clearly indicate that he was simply the factor of the farmers and dairymen, who accepted his proposition to furnish milk upon that plan. It is true the deed of trust has a provision looking to the security of any one who might sell milk to Kilbourne, and it appears that such provision was inserted to protect a party who sold his milk outright to him, and it would seem that the fact that such a provision was inserted for the purpose, would preclude the idea that the others made sale of their milk, for he appears to have been the only person shown to have made an absolute sale. The master in chancery, the Superior and Appellate Courts, have found that the milk was furnished by complainants to Kilbourne to be made and sold on their account, as their agent or factor, and with this conclusion we agree.

It appears that before Kilbourne bought the factory, the farmers and patrons of this factory managed and run the business through officers or agents of their own selection. Kilbourne, claiming to have large experience in the business and to have worked up a good trade for butter and cheese, represented to such patrons that he could make better sales than any agent they could appoint, and in the arrangement finally consummated, they give him full power not only to manufacture, but to sell the entire product of the milk furnished by them.

37—127 ILL.

Kilbourne claimed to be, and undoubtedly was, an expert in the production of butter and cheese, and his relation to the milk owners brought him directly within the definition of a factor. (Wharton on Agency, 735.) The fact that he was to prepare the product for market did not render him any the less a factor. The principal may, by contract, require the agent or factor to guarantee the collection of the price of all goods sold, and the factor may guarantee that the property of his principal shall realize a certain sum.

The case of *Lonergan* v. *Stewart*, 55 Ill. 48, is relied on, as showing that there was, under the circumstances here shown, an absolute sale of the milk. In that case it is said: "That when the identical thing delivered is to be restored, though in an altered form, the contract is one of bailment, and the title to the property is not changed; but when there is no obligation to restore the specific article, and the receiver is at liberty to return another thing of equal value, he becomes a debtor to make the return, and the title to the property is changed—it is a sale."

If the power of sale conferred had not been given, there can be no doubt that the owners of the milk would have owned its product. In such case, the identical thing, though in an altered form, would be required to be delivered, and would be the property of the owners of the milk. As soon as the milk was converted into butter and cheese, Kilbourne's power to sell as a factor attached, and he took the same as the agent of the milk owner, holding the title for them until a sale was effected. This may be more clearly apparent by supposing a revocation of his authority to sell. Can there be any doubt as to the legal ownership of the butter and cheese in such case? It is true, the manufacturer might have held it until his charges for its manufacture were paid; but, subject to his lien for his commission, it would have belonged to the party who employed him to manufacture it.

It is claimed that Church and G. W. Waterman, by taking out attachments against Kilbourne, are estopped from denying that they sold him their milk. At the time of the institution of these suits, Kilbourne was indebted to these parties for money he had received for the sale of their butter and cheese in his hands as their agent; besides this, the affidavits for attachment do not state an indebtedness for milk sold. In the *Lonergan case, supra,* the affidavit alleged that the indebtedness was for corn sold. The attachment suits before referred to can not be held as concluding the plaintiffs therein.

Kilbourne, having failed in business, and being largely indebted to the First National Bank of Elgin, on the night of October 14, 1883, transferred and assigned to the bank all the butter and cheese then on hand and in the process of manufacture, as a further security and pledge for the payment of his debt to the bank. The law is well settled that a factor can not pledge the goods of his principal for his own debt, and it follows, that the bank, by taking such pledge or security, acquired no title as against the real owner.

The second point made in the case is, that the deed of trust of April 4, 1882, is void for indefiniteness as to the beneficiaries, and is, therefore, not a lien on the premises therein described. For some reason, the farmers and dairymen in the neighborhood of this factory desired some sort of security that they would be paid the dividend, in accordance with the agreement of Kilbourne, on the milk they might furnish, and to secure their custom and patronage, the deed of trust before mentioned was executed. The beneficiaries of the trust were those who should thereafter furnish the factory with milk, to be manufactured by Kilbourne under the agreement before referred to. This trust deed stood as a continuing offer by Kilbourne to all persons who might patronize him. Any person in the neighborhood, after the making and recording of such deed, might rely on the same, and receive the benefit thereof by becoming a patron of the factory. When we look at the

inducement and purpose of the making of the deed of trust, its object being to draw and secure the custom and patronage of any and all who had milk to dispose of, and were willing to accede to the terms proposed by Kilbourne, it is apparent that the intention of its maker was not to limit the deed as a security of those present when it was drawn and executed. It is not essential to the validity of a deed of trust that the beneficiaries should appear therein by name. It will be sufficient if they are so described or designated that they may be ascertained and distinguished.

It is also urged that the milk of complainants can not be traced into the butter and cheese transferred to the bank, and in support of this objection it is said that Kilbourne had butter and cheese at his factory in Dundee, and also bought on the market, and mixed the same with the product of his factory, and sold all by the same brand, so that there was no means of identifying the product of the milk of complainants. If that be so, and the property of complainants had been mixed with other property of like kind, without their consent, they should not be the losers thereby. The rule is, that if a party unlawfully mixes and confuses his goods with those of another, so that they can not be distinguished, the innocent party will be entitled to take the whole. The burden is upon the party thus confusing his goods with another, to identify his own property or lose it. (*Diversey* v. *Johnson*, 93 Ill. 547; *Fuller* v. *Paige*, 26 id. 358; *Beach et al.* v. *Schmultz*, 20 id. 185.) Kilbourne could convey to the bank no better title than he possessed.

Finding no error in this record, the judgment of the Appellate Court is affirmed.        *Judgment affirmed.*

Mr. JUSTICE MAGRUDER took no part in the decision of this case.

Mr. JUSTICE BAILEY, having heard this case in the Appellate Court, took no part in its decision here.