THE STATE *ex rel.* PARKER, *Appellant*, v. THOMPSON
*et al.*

Division One, February 5, 1894.

1. **Factor**: PRINCIPAL: MANUFACTURING MATERIALS.   One who agrees for a fixed salary to manufacture materials shipped to him by another, of which the title is to remain in the latter, and to sell them, is the latter's factor.

2. ———: ———: LIEN: UNPAID DRAFTS.   A factor has a lien upon the goods of his principal in his possession to protect himself against unpaid drafts drawn and accepted in the course of the agency.

3. ———: ———: ———: WAIVER.   A factor's lien is not waived by the failure to reserve it in the written contract creating the agency; it is only waived in express terms or by necessary implication.

*Appeal from St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

REVERSED AND REMANDED.

*Seneca N. Taylor* and *Mills & Flitcraft* for appellant.

(1)  A factor is a person to whom goods are consigned for sale, by a merchant residing abroad, or at a distance from the place of sale, for compensation, or a commission.  *Winn v. Hammond*, 37 Ill. 103; *Nagel v. McFeeters*, 97 N. Y. 196; *Baring v. Corrie*, 2 B. & Ald. 143; *Cotton v. Hiller*, 52 Miss. 13; 3 Am. and Eng. Encyclopedia of Law, 317; Ewell's Evans on Agency, [Ed. of 1879], p. 3; Story on Agency [8 Ed.], sec. 33. (2)  The compensation of a factor is usually a commission, but his compensation may be a fixed salary without commissions.  *Lawrence v. Bank*, 6 Conn. 527; *Winn v. Hammond*, 37 Ill. 103; *Nagel v. McFeeters*, 97 N. Y. 196; *Perkins v. State*, 50 Ala. 156; *Blood v. Palmer*, 11 Me. 414; Anderson's Dictionary of Law [Ed. 1889]; The Century Dictionary; Jacobs' Law Dictionary; Wharton on Agency and Agents [1 Ed.], sec. 735.  (3)  It is not at all essential that a factor should be entitled to a commission.  He is none the less a factor, though paid a fixed salary only, instead of a commission.  See cases cited above.  (4)  It is entirely consistent with the relation of factor that he should bestow labor upon the goods before they are ready for sale.  This may be carried to the degree of entirely changing them, as in the making of milk into butter and cheese, or the like, without destroying his relation of factor to the goods.  *Bank v. Schween*, 127 Ill. 573; *Shaw v. Ferguson*, 78 Ind. 554.  (5)  A factor has a general lien upon every portion of the goods of his principal in his possession, and upon the price of such as are lawfully sold by him for the general balance of the account between him and his principal. *Howard v. Smith*, 56 Mo. 314; *Lewis v. Mason*, 94 Mo.

556; *Young v. Thurber*, 91 N. Y. 390; Edwards on Bailments [3 Ed.] (1893), secs. 365–368. (6) A factor who has accepted drafts on the faith of goods consigned to him, is making an advance on the goods within the meaning of the law, and has for the amount the same lien or privilege as though the money had been paid by him. Story on Agency, secs. 376, 378; Mechem on Agency, sec. 1032; Ewell's Evans on Agency [Ed. 1879], p. 530, star p. 401; 13 Am. and Eng. Encyclopedia of Law, p. 586; *Vail v. Durant*, 7 Allen, 408; *Eaton v. Truesdale*, 52 Ill. 307; *Haiden v. Waldo*, 55 N. Y. 297; *Lambeth v. Turnbull*, 5 Rob. (La.) 264; *United States v. Villalonga*, 23 Wall. 41; *Stevens v. Robbins*, 12 Mass. 182. (7) When the lien of a factor has once attached it can, like other liens, only be lost or destroyed by some act of the factor. It is superior to the claims of subsequent purchasers, and can not be defeated by levy of an attachment or execution against the property or summoning a factor in garnishment. *Lewis v. Mason*, 94 Mo. 556; Mechem on Agency, sec. 1037; 3 Am. and Eng. Encyclopedia of Law, 337; *Burnett v. Ward*, 82 Ala. 557; *Bank v. West*, 46 Me. 15; *Bank v. Stewart*, 3 B. Monroe (Ky.), 73; *Buler v. Pondire*, 55 N. Y. 325; *Eaton v. Truesdale*, 52 Ill. 307. (8) The lien of the factor is but a special interest, and does not amount to a general ownership of the goods, even if he has made advances equal to or exceeding their value. The principal does not lose his ownership by committing the custody of the goods to the factor, and receiving advances upon them. He may, at any time, before the factor has sold the goods, reclaim them upon paying the advances made, with interest and expenses, and relieving the factor from liability on acceptances. *Lewis v. Mason*, 94 Mo. 556; Mechem on Agency, sec. 1034; *United States v. Villalonga*, 23 Wall. 41; *Holly v. Huggeford*, 8 Pick. 76;

*Jones v. St. Clair*, 2 N. H. 219. (9) A factor has such a special interest, however, in the goods, that he can maintain trespass or trover against one who injures them or deprives him of their possession. As against a mere stranger he can recover the full value of the goods. Mechem on Agency, sec. 1041, also, 765; *Robinson v. Webb*, 2 Bush (Ky.), 46; *Byer v. Bush*, 50 Ala. 19; *Little v. Fassett*, 34 Me. 545; *Winn v. Hammond*, 37 Ill. 104; *Fitzhugh v. Wyman*, 9 N. Y. 559. (10) Parker after making his claim had a right of action on the indemnity bond. *Bradley v. Holloway*, 28 Mo. 150; *Railroad v. Castello*, 30 Mo. 124; *State ex rel. v. Watson*, 30 Mo. 122. And this is so, even if the claim which Parker made was defective. *State ex rel. v. Doane*, 39 Mo. 50.

*W. B. Thompson* and *G. M. Mackellar* for respondents.

(1) The contract read in evidence between the Anchor Manufacturing Company and Parker does not create Parker a factor authorizing him to pledge, hypothecate and dispose of the property under the well known rule of law applicable to commission merchants or factors; that rule of law is defined clearly to be where merchandise is consigned to a commission merchant to be held and disposed of on account of the consignor without specific directions as to sales thereof, and the commission merchant incurs expense and makes advances on account of such consignment for the benefit of the consignor, the legal presumption is that the consignee has the right to sell according to the ordinary usages of trade and reimburse himself for such expense and advances. *Denny v. Rhodes*, 18 Mo. 147; *Phillips v. Schott*, 43 Mo. 92; *Brown v. McCaw*, 14 Pet. 479; *Marfield v. Douglass*, 1 Sandford, 360;

*Block v. Boiceau*, 1 Sandford, 78; *Gihon v. Stanton*, 5 Selden, 476; *Blackman v. Thomas*, 28 N. Y. 67; *Field v. Farrington*, 10 Wall. 141; *Howard v. Smith*, 56 Mo. 314. (2) The contract is of a different nature; it creates the relation of principal and agent and not that of consignor and commission merchant. *First.* It creates Parker an employee. *Second.* It prohibits him from forming a partnership with anyone else. *Third.* It limits his salary. *Fourth.* It specifically provides that the property shall belong to the Anchor Manufacturing Company and shall not be disposed of by Parker, except in pursuance of his agency. *Fifth.* It provides that the Anchor Manufacturing Company shall pay all the expenses of operating the agency. (3) The court will read and interpret the contract according to what it says, and unless it creates a factor's lien by its own force and effect, it will not enlarge its meaning as contended for by appellant. It is submitted, therefore, that the court below did not err in the construction of the meaning of the contract, and the judgment should be affirmed.

BLACK, J.—Daniel B. Sickles commenced a suit of attachment in the circuit court of the city of St. Louis against the Anchor Manufacturing Company, in March, 1890. The sheriff levied the writ upon a small steam boiler, a stave cutting machine and some other machinery and office furniture and also upon some $5,000 worth of barrels and barrel material, all of which was then in the possession of James H. Parker, the plaintiff in this action. Parker served upon the sheriff a written notice of a claim to the property, stating the claim to be that of a factor. Thereupon the plaintiff in the attachment suit gave bond under the provisions of the act of the third of March, 1855, concerning the duties of sheriff and marshal in the

county of St. Louis, and the sheriff sold the property. Parker then brought this suit against the principal and sureties in the bond. The trial court sustained a demurrer to the plaintiff's evidence, and the plaintiff took a nonsuit with leave, etc.

As the plaintiff's right to recover depends ' upon the question whether he has a factor's lien upon the property or any of it, and that question depends, to a considerable extent, upon the contract between the plaintiff and the Anchor Manufacturing Company, the defendant in the attachment suit, we set out the contract in full:

"This agreement, entered into this tenth day of August, 1889, between the Anchor Manufacturing Company, of Detroit, Michigan, and James H. Parker, Esq., of St. Louis, Missouri, witnesseth as follows:

"The Anchor Manufacturing Company, being desirous of selling a portion of its one-stave barrel material in St. Louis and vicinity, hereby agrees to allow James H. Parker to represent them as their agent in St. Louis, Missouri, and vicinity, under the firm name of James H. Parker & Co., upon conditions hereinafter mentioned, from and after this date, for one year, if terms of contract are satisfactorily carried out, and for a longer time if mutually agreed upon by all parties interested.

"The Anchor Manufacturing Company hereby agrees to ship barrel material, sizes and prices to be hereafter agreed upon, to J. H. Parker & Co., of St. Louis, Missouri, making drafts on each shipment, or on general account of shipment, at sixty days.

"J. H. Parker & Co., hereby agree to accept above mentioned drafts on account, and to work up a trade for the Anchor Manufacturing Company's material, make all collections and apply same toward Anchor

Manufacturing Company's drafts and the operating expenses of their firm.

"J. H. Parker & Co. further agree to use careful judgment in the selection of their customers, and to sell only to responsible parties.

"The Anchor Manufacturing Company agrees to assist J. H. Parker & Co. in getting the business started, and guarantees the payment of rent of a suitable plant and operating expenses during the existence of this contract, and also guarantees J. H. Parker a salary of $125 per month for the first six months, and $150 for the following six months of the first year. If the business increases constantly during the year, and grows fairly profitable, the Anchor Manufacturing Company agrees to reconsider this salary and pay J. H. Parker either a commission on sales, or make some other satisfactory arrangement agreeable to both parties concerned.

"J. H. Parker & Co. hereby agree not to associate any party or person or persons as a partner with their firm in the agency, without first obtaining the consent of the Anchor Manufacturing Company, to whom all property, cooperage material and barrels, tools and fixtures belong; and J. H. Parker & Co. further agree to carry on the business of making up this one-stave barrel material into barrels of the different sizes that are required by the trade of St. Louis and vicinity for flour, coffee, spices, chemicals and dry paints and all other merchandise that can be obtained for the one-stave barrel packages in the place named, in a business-like manner, making full and accurate reports to the Anchor Manufacturing Company each month of the business transacted, and to get the highest price possible for the one-stave barrel at all times."

According to the bill of exceptions, the plaintiff produced evidence tending to prove the following facts:

The Anchor Manufacturing Company, pursuant to the terms of the contract, shipped to the plaintiff machinery and tools to fit up a factory in St. Louis for the purpose of manufacturing the one-stave material into barrels, and at the same time furnished the plaintiff money to pay the expenses of setting up the machinery, and furnishing and fitting up an office at that place, and to pay rents for one month. All subsequent expenses, including wages of employees, clerk hire, rents and the plaintiff's salary, were paid by him out of proceeds arising from the sale of barrels and barrel material. He paid no part of such expenses out of his own means. The business of the factory at St. Louis seems to have been carried on in the name of J. H. Parker & Co., though the machinery and tools and office furniture were the property of the Anchor Manufacturing Company.

From the date of the contract to the commencement of the attachment suit, the Anchor Manufacturing Company shipped to the plaintiff large quantities of the barrel material. Plaintiff made up portions of this material and sold barrels and material as contemplated by the contract. He applied the proceeds to the expenses of the factory carried on by him in his name for his principal and to the expenses of the office and in liquidation of the drafts drawn on him. At the date of the attachment he had accepted drafts "at the instance and request of the Anchor Manufacturing Company, and for its accommodation" in excess of the total value of the material shipped to him. Accepted drafts were at that date outstanding and in the hands of third persons to the amount of $8,000. Some of them were renewals of former drafts. The Anchor Manufacturing Company paid plaintiff a salary of $125 per month, and the plaintiff received the barrel material so shipped to him, and accepted the drafts

pursuant to the terms of the before-mentioned contract. Evidence was produced tending to prove some other facts, but it is not deemed material here.

The questions are: *First*, whether the plaintiff was a factor; and, *second*, if he was, whether he has a lien on the attached property or any of it because of the unpaid drafts accepted by him.

1. A factor or commission merchant is an agent; and it is to be observed at the outset of this case that the character of factor and broker is often combined in the same person, and in such cases we are to distinguish between his acts in the one character and in the other. Story on Agency [9 Ed.], sec. 32*a*. And in like manner the character of agent and servant may be, and often is, combined in one and the same person, and in such cases a distinction must be made between his acts as servant and those as agent.

A factor or commission merchant is generally defined to be "an agent employed to sell goods or merchandise, consigned or delivered to him by or for his principal, for a compensation, commonly called factorage or commission." Story on Agency [9 Ed.], sec. 33. Again, a factor is "a commercial agent, transacting the mercantile affairs of other men, in consideration of a fixed salary or certain commission, and, principally, though not exclusively, in the buying and selling of goods." Anderson's Law Dictionary. As the last definition states, and as the first implies, a factor may receive his compensation by way a fixed salary. *Winne v. Hammond*, 37 Ill. 99.

The person to whom property is consigned for sale is none the less a factor because he bestows labor upon it before it is ready for sale, and this is true though the character of the property be entirely changed, as where milk is converted into butter and cheese. *Bank v. Schween*, 127 Ill. 573. Or, where

hogs are slaughtered and manufactured into meat. *Shaw v. Ferguson*, 78 Ind. 547. It was said in the case last cited, the law gave the defendants, as slaughterers and packers, a lien on the product for their reasonable charges for slaughtering and packing; and it gave them, as factors, a lien on the property for advances made thereon, expenses and commissions.

Again, though the factor may, and usually does, sell in his own name, the goods remain the property of the principal, subject only to the factor's lien; so that an attaching creditor of the principal may pay off the factor's lien and hold the goods under the attachment. *Lewis v. Mason*, 94 Mo. 556.

The stipulations, therefore, in the contract that the plaintiff was to, and did, receive a salary of $125 per month instead of commissions, that he was to manufacture the one-stave material into barrels, and that the material shipped to him was to remain the property of the Anchor Manufacturing Company, do not deprive him of his character of factor or commission merchant, so far as he was the agent of that company for the sale of the property, whether sold in its unmanufactured or in a manufactured form. It may be true that he was not a factor in running and operating the barrel factory, but he was a factor so far as concerned the receipt and sale of the goods.

The other stipulations of the contract, that plaintiff was to represent the Anchor Manufacturing Company as its agent in the sale of barrel material, that the company was to have the right to make drafts on the plaintiff on account of each shipment, or on general account, and that plaintiff was to use careful judgment in the selection of customers, are all perfectly consistent with the duties of a factor. There can be no doubt but the contract created the relation of principal and factor, as to the shipment, receipt and

sale of the material, whether sold as received or after it had been set up in the form of barrels.

2. The next question is whether the plaintiff has a factor's lien as security for the unpaid outstanding drafts. It was conceded on argument at the bar of this court that the plaintiff had no such lien on the boiler and other machinery, or on the office furniture; and as to all such property we, therefore, express no opinion. The question for us to determine is, whether he has a lien on the manufactured and unmanufactured material which was in his possession at the date of the levy of the attachment thereon. If he has, then the judgment must be reversed and the cause remanded.

The common law gives the factor a lien upon the goods of his principal in his possession, to secure the payment of the general balance of account between himself and his principal. While there is no such lien as to independent debts created without reference to the agency, the factor has a lien to secure him against obligations which he has incurred as surety for the principal upon the strength of the consignment. Mechem on Agency, sec. 1032. Says Story: "The lien may also extend to all sums for which a factor has become liable, as a surety or otherwise, for his principal, wherever the suretyship has resulted from the nature of the agency, or it has been undertaken upon the footing of such a lien." Story on Agency [9 Ed.], sec. 376. So it must follow, and is believed to be well settled law, that a factor has a lien on the property of his principal in his possession, to secure and protect him against accepted and unpaid drafts drawn and accepted in the course of the business of the agency.

Now there can be no doubt but that the plaintiff accepted the drafts drawn on him by the Anchor Manufacturing Company on account of and because of the

agency created by the contract. It is, therefore, perfectly clear that he has a lien on the material, manufactured and unmanufactured, to secure the payment of these unpaid drafts, unless he has waived it. The defendants say he did waive the lien, and the line of argument pursued to reach that result is in substance this: The parties put their agreement into writing, and, as the writing does not provide for a lien, the plaintiff has none; that, under these circumstances, the right to a lien is not implied from the fact that the plaintiff agreed to, and did, accept the drafts.

STORY says: This lien "is deemed to exist in all cases, until the contrary presumption is clearly established. But, if such a presumption is clearly established, and, *a fortiori*, if an express agreement repelling it is proved, then the lien of the factor fails, as every other lien does, when it contravenes the intention of the parties." Story on Agency [9 Ed.], sec. 378. A head note to *Nagle v. McFeeters*, 97 N. Y. 196, which fairly expresses the substance of the opinion in the abstract, is in these words: "Where a principal consigns goods to an agent to sell, under an agreement that the latter will accept bills drawn upon him by the former to the amount of goods so consigned on hand, it is a necessary inference that the drafts are to be drawn on the credit of the goods; and to the amount of acceptances outstanding, the agent has a lien on the goods in his hands, as security, and is entitled to retain the same until the acceptances are paid."

The bill of exceptions in this case states that the plaintiff adduced evidence tending to prove that he received the barrel material so shipped to him by the Anchor Manufacturing Company, and accepted the drafts mentioned in his testimony, pursuant to the terms of the written agreement; and there is no evidence of

a contrary tendency. The question of waiver of the lien must be, therefore, determined by the contract itself. The law, it is to be observed, gave the plaintiff a lien on the goods in his hands to protect him against these acceptances; and this right to a lien for such purposes entered into and constituted a part of the agreement, unless something to the contrary appears. To overcome this right conferred upon him by the law, the waiver must be stated in express terms or arise by necessary implication. Now, the following are the only stipulations set out in the contract having any bearing upon this subject: The Anchor Manufacturing Company agrees to ship barrel material, sizes and prices to be hereafter agreed upon, to Parker, making drafts on each shipment, or on general account, at sixty days. Parker agrees to accept the above mentioned drafts on account, make collections and apply same toward payment of the drafts and operating expenses.

There is here no express waiver of a lien, nor is there a clause or word from which it can be inferred Parker was not to have a lien. There is nothing indicating such an intention. The Anchor Manufacturing Company had its home office in the state of Michigan, and it would be unreasonable and out of all character to conclude, from anything stated in this agreement, that Parker agreed to waive the lien which the law gave him to secure the payment of these acceptances. That the trial court erred in sustaining the demurrer to the evidence, we entertain no doubt whatever, and the judgment is therefore reversed and the cause remanded. All concur.