**KEMP-BOOTH CO., Limited, v. CALVIN.**

**No. 7768.**

Circuit Court of Appeals, Ninth Circuit.

June 1, 1936.

Riddell & Brackett, of Seattle, Wash., for appellant.

Earl G. Rice, McClure & McClure, Walter A. McClure, and Wm. E. McClure, all of Seattle, Wash., for appellee.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

DENMAN, Circuit Judge.

J. M. Galvin, trustee in bankruptcy of the House of Irving, a corporation of Seattle, Wash., brought this action against Kemp-Booth Company, hereinafter called appellant, to recover alleged preferences paid by the bankrupt to the appellant shortly before the commencement of bankruptcy proceedings. The case was tried to the court as one in equity, findings of fact and conclusions of law were made, and a decree rendered, awarding the trustee the relief prayed.

The facts as found by the court, supplemented in some particulars by our own study of the record, may briefly be stated as follows:

On July 26, 1930, the bankrupt, a tailor doing business in Seattle, entered into a contract with appellant whereby the latter was to provide the bankrupt with woolen suitings. The bankrupt's business, so far as concerns the appellant, was to fit suits for its individual customers, make up the suits from the woolens supplied by the appellant, and sell them to the customers. The contract under which the parties engaged to operate provided for the "consignment" by appellant to the bankrupt of woolen suitings which "are suitable for sale for the party of the first part [appellant] by the party of the second part [bankrupt]." The bankrupt was to receive for the sale of the consigned goods a commission, the amount of which was to be fixed by the appellant. The bankrupt was to render regular inventories to appellant and was to keep the goods insured in favor of appellant. The appellant was given the right at all times to check up on, inspect, and withdraw any or all of the consigned merchandise without notice to the bankrupt. In conclusion, the contract specified: "Tenth: The party of the second part [bankrupt] shall have the right until

otherwise directed in writing by the party of the first part [appellant], to make up any part or parts of said merchandise into garments, but in such case the title to all such garments shall remain in the party of the first part; and on the sale of any and all such garments the party of the second part shall receive and retain for their services and expenses in making up such garments such part of the selling price as shall exceed the sale price of the consigned merchandise used therein, as well as the usual commission on such merchandise."

Suitings were sent by appellant to the bankrupt under the contract, and the bankrupt carried on the business of making and selling suits until forced to close by bankruptcy proceedings.

It is undisputed that the contract provisions for payment of commissions were not observed. The bankrupt's compensation consisted of the difference between the list price of the woolens and the resale price of the finished suits.

The bankrupt never sold woolens in their unfinished state; its entire business consisted of making and selling finished suits. Hence the tenth paragraph of the contract is the section under which the parties operated. There is some conflict in the testimony as to whether the provisions of the paragraph relating to the retention by appellant of title to finished suits was observed; some of the evidence tending to show that when woolens were made into finished suits the parties considered the title thereto to be in the bankrupt, and that the bankrupt was obligated to appellant for the price of the woolens regardless of whether or not a finished suit was sold to a customer. This evidence is not clear, however, and there is testimony showing the contrary. We therefore indulge the reasonable inference that the parties intended to follow their expressed agreement, and find that the paragraph in question was operative.

Early in 1932, the bankrupt found itself in extremis financially, and far more in debt to appellant than to its other creditors. Appellant was fully aware of the existing state of insolvency. In January and February, 1932, in order to discharge its debt to appellant the bankrupt redelivered to it woolen suitings previously received from it, of the stipulated value of $1,652.23. There was also delivered certain accounts receivable of the bankrupt, such accounts arising from sales by the bankrupt to customers of suits made from appellant's woolens, a portion of which accounts were subsequently collected by appellant.

On March 25, 1932, less than four months after the delivery of the woolens and the assignment of the accounts to appellant, a petition in bankruptcy was filed against House of Irving, which was subsequently adjudicated bankrupt. The trustee later brought this action in the District Court, alleging that the transfer and assignment were preferential, under section 60b of the Bankruptcy Act, as amended (11 U.S.C.A. § 96 (b). The prayer of the complaint was for a money judgment against the appellant for the value of the transferred woolens, a reassignment of the uncollected accounts receivable which arose from suits made and sold by the bankrupt from appellant's woolens, and for an accounting and payment of the amounts collected by appellant on assigned accounts receivable.

The District Court entered its decree awarding the trustee the relief prayed; basing its decision on the sole ground that the tenth paragraph of the contract between the parties, providing that the bankrupt might make up woolens into suits and sell the finished suits to customers, keeping as its own compensation the difference between the final sale price and the price of the woolens, made the transaction between the bankrupt and the appellant one of conditional sale, with reservation of title in the seller merely as a security device. In so holding, the trial judge rejected appellant's contention that the transaction was a consignment of goods on the part of a principal to his agent to be sold by the agent for the principal. Having concluded that the contract was one of conditional sale, the judge found that it was inoperative to protect the appellant's title against the trustee in bankruptcy by reason of the fact that the contract was never filed for record and so fell within the terms of the Washington statute (Rem.Rev.Stat. § 3790), which provides: "That all conditional sales of personal property, or leases thereof, containing a conditional right to purchase, where the property is placed in the possession of the vendee, shall be absolute as to all bona fide purchasers, pledgees, mortgagees, encumbrancers and subsequent creditors * * * unless within ten days after the taking of possession by the vendee, a memorandum of such sale, stating its terms and conditions and signed by the vendor and ven-

380

dee, shall be filed in the auditor's office of the county, wherein, at the date of the vendee's taking possession of the property, the vendee resides."

On this appeal the only issue argued is the correctness of the trial court's classification of the transaction between the parties as a contract of conditional sale. Appellant admits that if it was properly so classified, the trustee is entitled to the recovery he seeks, by reason of the conceded application of the statute.

■■ Before addressing ourselves to the issue of the case on the merits, a point arising upon the argument in this court must be resolved; namely, whether the trustee properly sought his relief by way of a suit in equity instead of an action at law, and if he did not, what effect his erroneous choice should have on this appeal. Both parties have filed memoranda, in accord with each other, that the case was properly brought in equity, and that if it were not the error was waived. We agree with this viewpoint and see no reason for disturbing the decree on the ground that the action was brought on the wrong side of the court. In the first place, the complaint prayed for an accounting, which is an historic field of equity jurisprudence. Pomeroy, Equity Jurisprudence, § 110. It also asked for a specific order requiring the defendant to do a positive act, viz., hand over the uncollected accounts receivable. In the second place, assuming the action should have been at law, the defendant, by failing to object to the form in which it was brought, waived any defect therein. American Mills Co. v. American Surety Co., 260 U.S. 360, 366, 43 S.Ct. 149, 67 L.Ed. 306; Mutual Life Ins. Co. v. Markowitz (C.C.A.-9) 78 F.(2d) 396, 397; Horwitz v. New York Life Ins. Co. (C.C.A.-9) 80 F.(2d) 295, 302.

Returning to the merits of the appeal, the entire question turns upon whether the relation between the parties was that of vendor and vendee or one of principal and agent. If the principal-agent relationship was established; in other words, if the contract was one of "consignment," then appellant is entitled to retain the goods and its just proportion of accounts receivable into which they may be traced, for the reason that it never parted with title to them. If, on the other hand, the transactions were sales to the bankrupt and resales by it to its customers, with reservation of title in the appellant until the goods were made up *or sold* by the bankrupt, then appellant is

not entitled to prevail for the reason that a memorandum of the contract was not filed for record as prescribed by the statutes of Washington.

■ The appellant relies entirely on the contract, particularly the tenth paragraph thereof, which paragraph, it argues, speaks clearly of consignment, having no words indicating a passage of title, conditionally or otherwise, between the appellant and the bankrupt. The language, it is said, leaves no room for doubt as to the intent of the parties to set up an agency relationship. The plain wording of the contract, coupled with the fact that the parties carried on their transactions substantially in accordance with it, it is argued, definitely show a consignment, not a sale of goods. Exhaustive briefs have been filed by both parties to this cause, containing a great many citations of authority bearing on the class of cases of which this is one. We find it unnecessary to discuss the greater portion of these cases, inasmuch as their value lies in determining the general law on the subject. As appellant contends, and appellee does not deny, the problem is to be settled by the law of the state of Washington, where the transaction occurred. This is settled by the case of Bryant v. Swofford Bros. Dry Goods Co., 214 U.S. 279, 290, 29 S.Ct. 614, 618, 53 L.Ed. 997, where an issue arose in bankruptcy proceedings as to the relative rights of the trustee in bankruptcy and the conditional vendor of goods to the bankrupt. It was held that "in bankruptcy the *construction* and *validity* of such a [conditional sale] contract must be determined by the local laws of the state." (Italics supplied.) This holding was cited and relied upon in Tancy v. Penn Nat'l Bank, 232 U.S. 174, 180, 34 S.Ct. 288, 58 L. Ed. 558. It is an application of the general principle that federal courts will give effect to state rules governing the incidents and consequences of property transfers within the state.

Turning to the law of Washington, we find no statute which is pertinent, save the recording act quoted above. We must look to the decisions of the Supreme Court of that state to determine the legal effect of the property transfer involved here.

■ We hold that by the law of Washington the contract in suit clearly contemplated a consignment and not a sale of the suitings by appellant to the bankrupt. Title to the suitings and the finished suits remained in appellant until sold to the ulti-

mate purchaser. That a consignment relationship is contemplated and spoken of in the contract is clear. And, "It is a general rule that an owner of property may make such contracts with reference to it as he chooses, and that his contracts will be upheld by the courts so long as they violate no provision of express statute, or do not run contrary to some rule of public policy." Lloyd v. MacCallum-Donahoe Co., 127 Wash. 180, 183, 219 P. 849, 850. The bankrupt stresses the facts that no commissions were paid, the consignee's compensation being by way of the difference between the selling price of the finished suits and the invoice price of the suitings; and that the consignee was to keep the property insured. It also stresses the fact that the consigned goods were not kept separate from the bankrupt's other material. These are said to be factors speaking of sale rather than agency. The presence of such features, however, does not make a contract one of conditional sale, if the intent that it should be one of consignment clearly appears. Eilers Music House v. Fairbanks, 80 Wash. 379, 381, 141 P. 885; Lloyd v. MacCallum-Donahoe Co., supra.

Fundamental to a contract of sale is an obligation on the part of the vendee to purchase. "A vendor in a conditional sales contract has a choice of remedies. He may disaffirm the sale by retaking the property, or he may affirm it by suing to recover the balance of the purchase price." Bank of California v. Clear Lake Lumber Co., 146 Wash. 543, 557, 264 P. 705, 710. "A conditional sale, as the very terms imply, is a sale in which the transfer of the title to the buyer, or his retention of the title, is made dependent upon some condition. Usually the condition imposed is the payment of the purchase price; but, whatever may be its nature, to constitute a conditional sale there must be a contract between the parties by which the one party agrees to sell and the other party agrees to buy." Inland Finance Co. v. Inland Motor Car Co., 125 Wash. 301, 305, 216 P. 14, 15.

The contract before us imposes no obligation upon the bankrupt to buy the suitings sent it by appellant. It is only upon the sale to ultimate customers of finished suits made up from the suitings that an obligation arises between the parties. Herein the case differs from the recent Washington decision in Johnson-Stephens & Shinkle Shoe Co. v. Marlatt & Miller, 181 Wash. 621, 624, 44 P.(2d) 818, 820. In that case shoes were, in the language of the contract, "consigned" to a retail dealer to be sold to the public. The dealer, in addition to rendering to the "consignor" the invoice price of shoes sold to customers, was to pay him in addition 10 per cent. of the value of all shoes "consigned."* If the dealer decided to discontinue its shoe store, the "consignor" was to take back all shoes not shopworn or discontinued numbers, thus clearly implying an obligation on the part of the dealer to pay for these latter. Plainly, there were sufficient elements of obligation to buy on the part of the dealer to enable the Supreme Court of Washington to say, "for the purpose of this case, we accept appellant's contention that the contract is one of conditional sale." Furthermore, in the Johnson-Stephens Case, the result of the appeal would have been no different had the court held the contract to be one of consignment. We are of opinion, therefore, that this decision is not a departure from the previously established law of Washington.

This court has held on this general question a similar view to what we find to be the law of Washington. In re Renfro-Wadenstein (C.C.A.) 53 F.(2d) 834, 837.

■ It is said by the bankrupt that the change of form in the consigned goods, by means of the addition of trimmings and labor, from suitings to finished suits, is fatal to the conception that the transactions were consignments, title remaining in the appellant. There is no merit in this contention.

"It is a general rule of law, that if the materials of one person are united to the materials of another, by labor, forming a joint product, the owner of the principal materials will acquire the right of property in the whole, by right of accession." Pulcifer v. Page, 32 Me. 404, 405, 54 Am.Dec. 582.

This is old and well-established doctrine, 2 Blackstone, 404, and as applied to the agency relationship it means that the addition of labor and materials by an agent does not defeat the consignor's title. Lehmann v. Schmidt, 87 Cal. 15, 21, 25 P. 161; Shaw v. Ferguson, 78 Ind. 547, 554; First Nat. Bank v. Kilbourne, 127 Ill. 573, 20 N.E. 681, 11 Am.St.Rep. 174; State ex rel. Parker v. Thompson, 120 Mo. 12, 25 S.W. 346; Mack v. Snell, 140 N.Y. 193, 35 N.E. 493, 37 Am. St.Rep. 534. Mechem on Agency, §§ 2497, 2499.

We hold, therefore, that the suitings re-delivered to the appellant by the bankrupt are the property of the appellant and that the plaintiff has no valid claim for their value. As to the accounts receivable which have been assigned to appellant, the latter is entitled to so much of what it has collected thereon as represents the invoice price of the woolens, the suits from which gave rise to the accounts. A similar adjustment should be made on the uncollected assigned accounts.

Reversed.