[No. 12547.   In Bank. — December 11, 1890.]

## ERNST LEHMANN, RESPONDENT, v. R. SCHMIDT, APPELLANT.

ASSUMPSIT — CONVERSION OF PERSONAL PROPERTY — WAIVER OF TORT. — When one person converts to his own use the personal property of another, the latter may waive the tort, and sue in *assumpsit* for the value thereof.

ID. — WAIVER OF LIEN — CONVERSION BY BAILEE. — If a bailee refuses, upon demand, to deliver the property to the bailor, without setting up any lien thereon, he waives his right to claim a lien after suit brought to recover the value of the property.

ID. — CONTRACT FOR SALE OF WINE — CONVERSION BY FACTOR — REPUDIATION OF CONTRACT. — A factor who receives wine under an agreement to sell it for the owner, and when demand was made upon him fails to assert a lien thereon, and refuses to have anything further to do with the contract, or the sale of the wine, or to deliver or account for it, stating that it was so mixed up with his own wine that he could not make a statement of it, is guilty of a conversion of the wine, and cannot, after suit brought for its value, set up a lien for advances and expenses, as such lien, if any he had, was waived by his action.

ID. — CONTRACT FOR NET PRICE — LOSS ASSUMED BY FACTOR. — Where it was stipulated in the agreement that the owner of the wine was to receive a certain price per gallon, net, for the wine, and the factor agreed to bear the expense of shipping and curing, the factor is not entitled to any allowance for sediment, or for the money expended for freight, labor, and materials.

ID. — EVIDENCE — VALUE — STIPULATED PRICE. — Evidence that the wine
would have sold for more than the price stipulated in the contract, if it
had been sold at once, taken in connection with the price stipulated in
the agreement of sale, is sufficient to justify a finding that the wine was
worth the stipulated price at the time of its conversion.

ID. — ASSIGNMENT — ACTION BY ASSIGNEE. — An assignee of all of the
bailor's interest in the wine converted by the factor may maintain an
action for its value, although the wine converted was only a portion of
that consigned.

ID. — SPLITTING OF CAUSE OF ACTION. — The rule against the splitting up of
a cause of action is inapplicable to such a case.

ID. — AMOUNT OF RECOVERY — DEDUCTIONS — ADVANCES BY FACTOR — AL-
LOWANCE FOR CASKS ORDERED. — In determining the amount of recov-
ery from a factor for the value of wines converted by him, there should
be deducted from the stipulated price of the wines not only the amount
of cash advanced to the bailor by the factor, but also the value of casks
and drayage ordered from him by the bailor, the amount of which was
charged as an advance under the contract.

APPEAL from a judgment of the Superior Court of the
city and county of San Francisco.

The action was brought by the plaintiff, as the assignee
of E. B. Smith, in the form of a complaint in *assumpsit*
for goods, wares, and merchandise sold and delivered to
defendant at his request, viz.: Nine thousand gallons of
wine, at twenty cents a gallon, amounting in the aggre-
gate to the sum of eighteen hundred dollars. The de-
fendant denied all of the allegations of the complaint,
and set up the following special contract: —

"OFFICE OF R. SCHMIDT, CALIFORNIA WINE GROWERS' AGENT, 304 BATTERY
STREET. — MAIN STREET, ST. HELENA, CALIFORNIA.

"SAN FRANCISCO, March 3, 1886.

"Agreement made between E. B. Smith, of Martinez,
and R. Schmidt, of San Francisco, as following: —

"1. The said E. B. Smith, having at his cellars
of Cordelia about fifty thousand gallons Malvasia and
Mission, thirty thousand gallons Zinfandel, and twenty-
two thousand gallons Malvasia, agrees to sell his wines
through the agency of the said R. Schmidt at the stan-
dard price of 20 cents (twenty cents) per gallon, net.

"2. The said R. Schmidt agrees to prepare these

wines into a marketable condition at the rate of 1 cent (one cent) per gallon, and to outlay freight on these wines to this city, amounting about to 1 cent (one cent) per gallon.

"It is further agreed between the parties hereto that all the profits arising out of the sale of these wines over and above the standard price of twenty cents per gallon, and the additional expenses, about two cents per gallon, shall be divided in equal shares between the parties hereto, and the said R. Schmidt agrees to furnish the necessary advances of money in case Mr. E. B. Smith is in want of any, the latter giving the proper time of notification to procure the money; no commissions to be deducted, as the one half of the profit is considered equivalent for all charges and commissions.

"E. B. SMITH.<br>"R. SCHMIDT."

The defendant pleaded that he had made advances to E. B. Smith, and incurred liabilities for his use and benefit in caring for said wines, and preparing the same for market, and for freight and storage, amounting in the aggregate to $1,478.57, and had received from the sale of wines at his request the sum of $1,124.16, and no more; and alleged that plaintiff sold all but nine thousand gallons of said wines contracted for, through another agency, without defendant's consent, whereby defendant was damaged in the sum of $1,860, in the loss of profits which would have accrued had defendant not been deprived of the opportunity of selling all the wines contracted for.

The court found that the contract pleaded by the defendant was entered into, and that 7,981 gallons of wine were delivered in March and May, 1885, pursuant to the agreement, which were of the value of twenty cents per gallon, amounting to $1,596.20; that defendant advanced for and on account of said wines the sum of $678.50 in cash, and no more; that on the seventeenth day of June, 1886, the defendant refused to proceed further under the

contract, and notified E. B. Smith of his refusal, and re-
fused upon demand to account for any wine sold by him,
or to return the wines, but converted the whole of said
7,981 gallons of wine to his own use and benefit, and that
sales were subsequently made by the plaintiff, through
another agency, with the knowledge and consent of the
defendant.    Further facts are stated in the opinion of
the court.

*Chapman & Slack*, for Appellant.

An allegation of a cause of action for goods sold and
delivered is not supported by proof that the goods were
consigned to be sold on commission. (*Evans* v. *Bailey*,
66 Cal. 112.)    If the contract of March 3d constituted
Smith and the defendant partners with respect to this
wine, the present suit fails. (*Morganstern* v. *Thrift*, 66
Cal. 578.)    Allegations and proofs must correspond, and
unless the facts found are within the issues, the judgment
cannot be sustained. (*Murdock* v. *Clarke*, 59 Cal. 683;
*Gilman* v. *Bootz*, 63 Cal. 120; *Tomlinson* v. *Monroe*, 41
Cal. 94; *Stout* v. *Coffin*, 28 Cal. 65; *Rowan* v. *Bowles*, 21
Ill. 17.)    The plaintiff must recover, if at all, upon the
cause of action as set out in his complaint, and not upon
some other which may be developed by the proofs.
(*Burke* v. *Levy*, 68 Cal. 32; *Mondran* v. *Goux*, 51 Cal. 151.)
And when a party proves a contract essentially different
from the one declared on, the defendant is entitled to a
nonsuit. (*Johnson* v. *Moss*, 45 Cal. 517; Civ. Code, sec.
3336.)    The plaintiff could not take a valid assignment
of part of wine agreed to be sold under the express con-
tract between E. B. Smith and the defendant. (*Thomas*
v. *Rock Island G. & S. M. Co.*, 54 Cal. 578; *Zirker* v.
*Hughes etc.*, 77 Cal. 235.)    The defendant had a right to
retain possession of the wine until reimbursed for ad-
vances, expenditures, etc. (Civ. Code, secs. 3051–3053.)
There was no evidence of the market value of the wine
at the time of conversion. (Civ. Code, sec. 3336.)    There

being no claim of title to the property in defendant, the refusal to deliver was no waiver of the lien. (*Pulcifer* v. *Page*, 32 Me. 404; 54 Am. Dec. 582–597.)

*A. Heyneman*, for Respondent.

Where personal property is tortiously taken, the party aggrieved may waive the tort, and sue in *assumpsit* for the value of the property, and under this theory the action was brought, and the contract admitted in evidence. (*Pratt* v. *Clark*, 12 Cal. 89; *Roberts* v. *Evans*, 43 Cal. 380; *Berly* v. *Taylor*, 5 Hill, 577; Greenl. Ev., sec. 108; *Young* v. *Marshall*, 8 Bing. 43.) An unwarrantable disposal of goods by an agent contrary to the instructions of the principal is a conversion of them by the agent. (Dunlap's Paley on Agency, sec. 79, 80.) A factor or agent is in duty bound to keep the goods of the principal unmixed with his own, and to render a true account. (*Clarke* v. *Tipping*, 9 Beav. 284.) The commingling of the wine by Schmidt with his own, in connection with the evidence as to his refusal to give any account thereof, proves a conversion. (*Pulcifer* v. *Page*, 32 Me. 404; 54 Am. Dec. 582, 591.) A confusion of goods is such a mixture of goods of two or more persons that they cannot be distinguished. (2 Kent's Com. 364; 2 Schouler on Personal Property, 42.) The party whose fault or neglect causes the mixture must bear the whole loss. (*Robinson* v. *Holt*, 39 N. H. 557; 75 Am. Dec. 233; *The Idaho*, 93 U. S. 575; *Alley* v. *Adams*, 44 Ala. 609; *Root* v. *Bonnema*, 22 Wis. 539.) If damages are given to the innocent party, they will be the utmost value of his property. (*Hart* v. *Ten Eyck*, 2 Johns. Ch. 62; *Brackenridge* v. *Holland*, 2 Blackf. 377; *Lord Rokeby* v. *Elliot*, L. R. 13 Ch. D. 277.) There was no lien, because no debt was due under the terms of the contract. (Civ. Code, secs. 30, 53; 2 Kent's Com. 635; *Com. Nat. Bank* v. *Heilbronner*, 108 N. Y. 439; *Ract* v. *Duviard-Dime*, 21 N. Y. St. R. 739; *Barry* v. *Longmore*, 12 Ad. & E. 639.) There could have

been no lien for the amount of advances found by the court, because the answer admits receipt of a greater sum from the sales of wines before the alleged conversion. If any lien existed, it was waived by repudiation of the contract, and refusal to redeliver or account for the wines, without the assertion of a lien; and no lien can be asserted after suit brought. (*McPherson* v. *Neuffer*, 11 Rich. 267; *Holbrook* v. *Wight*, 24 Wend. 178; 35 Am. Dec. 607; *Dows* v. *Morewood*, 10 Barb. 183; *Everett* v. *Saltus*, 15 Wend. 478; *Saltus* v. *Everett*, 20 Wend. 268; *Ætna Ins. Co.* v. *Shryer*, 85 Ind. 363, 366, 367; 1 Addison on Contracts, 421; Overton on Liens, 142; Edwards on Bailments, sec. 448; *Boardman* v. *Sill*, 1 Camp. 410, and note; *Dirks* v. *Richards*, 5 Scott N. R. 534; *Rogers* v. *Weir*, 34 N. Y. 463, 471; *Judah* v. *Kemp*, 2 Johns. Cas. 411; *Leigh* v. *Mobile etc. R. R. Co.*, 58 Ala. 165; *Picquet* v. *McKay*, 2 Blackf. 465; *Bean* v. *Bolton*, 3 Phila. 87; *Scarfe* v. *Morgan*, 4 Mees. & W. 270.) As to waiver of lien in case contract is abandoned, see *Fitzell* v. *Leaky*, 72 Cal. 477; *Sparks* v. *Hess*, 15 Cal. 186; *Blythe* v. *Poultney*, 31 Cal. 238.

PATERSON, J.—The authorities are clear upon the proposition that when one person converts to his own use the personal property of another, the latter may waive the tort, and sue in *assumpsit* for the value thereof. (*Pratt* v. *Clark*, 12 Cal. 89; *Roberts* v. *Evans*, 43 Cal. 380; *Berly* v. *Taylor*, 5 Hill, 577; 2 Greenl. Ev., sec. 108.) But it is contended by appellant that the defendant had a lien on the wine for money paid out and advanced, and that his refusal to comply with the plaintiff's demand did not constitute a conversion. The court found, however, that the defendant advanced on account of said wines, under the agreement, the sum of $678.50, and no more, and that he incurred no other liabilities on account of the wine under the agreement; and the answer of the defendant admits that he had received, "as the

proceeds of the sale of a portion of said wines mentioned in plaintiff's complaint," the sum of $1,124.16. Thus it appears, from the findings, evidence, and admissions of defendant, that he had received more than he had advanced and expended. But if this were not so, the defendant waived his lien, if any he had, for moneys advanced or expenses incurred on account of the wine, by repudiating the contract, refusing to deliver the wine, and by declining to account to Smith for the amount received or expended. It has been held in England that a person having a lien on goods does not waive it by the mere fact of his omission to state that he claims them in that right when they are demanded; but if a different ground of retention than that of the lien be assumed, the lien ceases to exist. In this country the weight of authority seems to support the contention that if the bailee refuse, upon demand, to deliver the property without setting up any lien thereon, he waives his right to claim a lien after suit brought. (*Hanna* v. *Phelps*, 7 Ind. 24; *Everett* v. *Saultz*, 15 Wend. 478.) In the case at bar, it is true, the defendant was not merely a bailee for service; he was also a factor to sell; but he not only failed to assert a lien on the wine for advances and expenses at the time a demand was made upon him, but he notified Smith "that he would not have anything more to do with the contract," refused to go on with the sale of the wine or have anything further to do with it, and refused to deliver possession of the wine or make any accounting in relation thereto. He stated to one of the witnesses that he could not tell anything about the wine, as "it was so mixed up with his own wine that he could not make a statement of it." Upon this evidence the court was justified in finding that there was a conversion of the property, and that defendant waived his lien, if any he had. (Civ. Code, sec. 29; *McPherson* v. *Neuffer*, 11 Rich. 267; *Ramsby* v. *Beezley*, 11 Or. 49; Overton on Liens, sec. 115, p. 142.)

We do not think that the defendant is entitled to any allowance for the 230 gallons of sediment, or for the money expended for freight, labor, and materials. He knew when he took the wine that there would be some sediment and waste in curing it, and it was stipulated in the agreement that plaintiff was to receive twenty cents per gallon, net. He agreed to furnish the necessary labor and outlay for freight, labor, etc., in shipping and curing the wine. It is admitted that he received the 7,981 gallons of wine with which the court charged him, and having converted it all to his own use, any expense or loss incurred in getting possession of that quantity or in improving its quality must be borne by himself.

The finding of the court as to the value of the wines is supported by the evidence. Mr. Smith testified that if the defendant had sold the wine at once "he could have realized a great deal more than twenty cents per gallon, for wines were very high at that season; but his neglect and delay caused me a great loss." Furthermore, it was stipulated in the contract, as stated above, that plaintiff should receive twenty cents per gallon, net; and, under these circumstances, having converted it to his own use, we think the price stipulated in the argeement is some evidence of the value of the property at the time of the conversion.

The point was made that the assignment to the plaintiff did not entitle him to maintain this action, but we think it is sufficient to support an action for the value, although it be for only a portion of the wines referred to in the agreement. The rule against the splitting up of the cause of action (*Zirker* v. *Hughes*, 77 Cal. 235) is inapplicable to this case.

The findings of the court are supported by the evidence, with the exception of the fourth finding, which states that defendant incurred no other liabilities and made no other advances than the $678.50 cash advanced to Smith. The latter testified that he received from the

defendant the sum of $678.50 in cash, and some casks that he had ordered from the defendant.   The defendant testified that the casks referred to were furnished at the request of Smith, and were worth the sum of $39.55, including drayage, which amount was charged to Smith as an advance under the contract.   It is clear, therefore, that the defendant should have been allowed that amount as an offset, in addition to the $678.50.

The cause is remanded, with directions to the court below to modify the judgment, by inserting therein *nine hundred and twelve dollars and ninety-five cents,* instead of the words and figures " nine hundred and fifty-two and fifty hundredths ($952 50-100) dollars."   As so modified, the judgment will stand; but the respondent will be taxed with the costs of this appeal.

BEATTY, C. J., McFARLAND, J., FOX, J., SHARPSTEIN, J., and THORNTON, J., concurred.